IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LEONA BREWER, as Personal Representative
of the Estate of EDWARD ROSE, deceased

       Plaintiff,

v.                     Case No. 2:02-cv-00048

JOE MAYNARD, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Motion to Quash and for Protective Order filed by defendants Joe Maynard, Norma Jean Maynard, Gregory Maynard, and Denise M. Gauze (hereinafter "the Individual Defendants"), and non-party W. Randolph Fife (hereinafter "attorney Fife"), on November 2, 2006 (docket # 252). The Motion is supported by a Memorandum (# 253). Defendant National Indemnity Company (hereinafter "NICO") joined in the Motion and Memorandum (# 255). Plaintiff responded in opposition (# 257). The Individual Defendants, attorney Fife, and NICO filed replies (## 262, 264). The Motion is ripe for decision.

This case concerns a fatal motor vehicle accident, and the availability of insurance to cover Plaintiff's loss. Plaintiff's decedent was killed as a result of an accident involving a wrecker owned by the Individual Defendants. Plaintiff and the Individual Defendants settled Plaintiff's claims for the $100,000 limit of the

policy sold to the Individual Defendants by NICO (through one or more insurance agencies).  The Settlement Agreement, signed in December, 2002 and January, 2003, contained the following pertinent provisions:

> WHEREAS, Administratrix claims that the Maynards were required by law to carry liability limits of $750,000, and claims National Indemnity Company and/or Joe A. Young Insurance Agency or any other entity should have so advised and insured the Maynards and has asserted such claims in a civil action filed in the United States District Court for the Southern District of West Virginia, Civil Action [N]o. 2:02-0048; and

> WHEREAS, National Indemnity Company, on behalf of its insured, has agreed to pay the $100,000 limits of the Policy in exchange for a release of the Maynards and has agreed to litigate further with Administratrix her claim that the Maynards were required by law to carry greater liability limits in the amount of $750,000 and that National Indemnity Company, Joe A. Young Insurance Agency or any other entity should have so advised and insured the Maynards; and

> WHEREAS, Administratrix, the Maynards and National Indemnity Company desire to settle the claim asserted by Administratrix against the Maynards subject to preservation of certain rights of Administratrix against National Indemnity Company and Joe A. Young Insurance Agency.

> Now, therefore, for and in consideration of the promises, covenants, agreements and understandings hereinafter set forth, the parties agree as follows:

> **I. SETTLEMENT**

> Administratrix, the Maynards and National Indemnity Company hereby agree that Administratrix's claim for wrongful death against the Maynards is partially compromised and settled for the sum of One Hundred Thousand Dollars ($100,000.00)(the "Settlement"), the payment of said amount to be obtained by Administratrix exclusively from National Indemnity Company, and reserve the right to continue to pursue the declaratory action

and all other causes of action set forth in the amended Complaint, to the extent additional coverage limits are determined to exist.

* * * Administratrix specifically acknowledges and understands that the Maynards make no representation or warranty that National Indemnity Company is obligated to provide coverage for any amount over and above $100,000. Administratrix also specifically acknowledges that the Maynards and National Indemnity Compapny do not agree and expressly deny that the Administratrix's claim has any value in excess of the $100,000 paid in settlement.

* * * To the extent any other liability insurance proceeds are adjudicated to be available for the Administratrix's claim in excess of $100,000 arising out of the death of Edward Rose, then Administratrix will seek recovery for such claim, to the extent that it exceeds $100,000, which the Maynards and National Indemnity Company expressly deny, only from an entity other than the Maynards.

## II.   RELEASE OF CLAIMS AGAINST THE MAYNARDS

* * * This release is not intended to, nor shall it be construed to, affect the Administratrix's right to pursue her claim against National Indemnity Company or Joe A. Young Insurance Agency, W.E. Kingsley Company or any other entity that the Policy should have had liability limits of $750,000 as contained in Plaintiff's Second Amended Complaint.

* * *

It is further expressly agreed and understood that the Maynards and National Indemnity Company do not concede and expressly deny that the value of the Administratrix's claim against the Maynards exceeds the amount of the settlement herein.  In the event that the Administratrix succeeds in establishing that there is additional coverage available under the Policy, the Administratrix will continue to bear the burden of proving that her claim has any value beyond that already paid in the Settlement.

## III.  ASSIGNMENT TO ADMINISTRATRIX OF THE MAYNARDS' RIGHTS FOR INDEMNIFICATION AND OTHER CLAIMS ARISING FROM THE FAILURE TO PROVIDE FEDERAL AND STATE MINIMUM COVERAGE UNDER THE POLICY.

3

The Maynards hereby assign and transfer to Administratrix all rights and cause of action for indemnification which the Maynards may have under the Policy purchased from National Indemnity Company, Joe A. Young Insurance Agency and W.E. Kingsley Company, as said Policy may apply to the claims asserted by Administratrix against the Maynards in Civil Action No. 2:02-0048 whether under the terms of the policy, contract or by operation of law.

The Maynards further assign and transfer to Administratrix all rights and causes of action which the Maynards may have against National Indemnity Company, Joe A. Young Insurance Agency and W.E. Kingsley Company for extracontractual, statutory or common law liability arising out of the claim that National Indemnity Company, Joe A. Young Insurance Agency and W.E. Kinglsey Company or any other entity allegedly failed to provide federal and state minimum limits of coverage as asserted by Administratrix in Civil Action No. 2:02-0048.

* * *

### VI.   FUTURE COOPERATION

It is expressly agreed and understood that Administratrix, the Maynards and National Indemnity Company will cooperate fully, and execute any and all supplementary documents and to take all additional action that may be necessary or appropriate to give full force and effect to the terms and provisions of this Release and Settlement Agreement which are not inconsistent with its terms.

After execution of the Settlement Agreement, NICO moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, arguing that Plaintiff lacked standing, as Administratrix, to pursue her claim against NICO for the alleged negligent breach of its duty to provide minimum commercial liability insurance coverage to its insured (# 107).  The presiding district judge, the late Hon. Elizabeth V.

4

Hallanan, granted the motion to dismiss (# 118), and entered final judgment (# 147).  An appeal was taken, which resulted in the U.S. Court of Appeals for the Fourth Circuit holding that Kentucky had "the most significant relationship to the transaction and the parties" and that Kentucky law applied, and entering an Order of Certification to the Supreme Court of Kentucky. *Brewer v. National Indemnity Co.*, 363 F.3d 333, 338-39 (4th Cir. 2004).

The Supreme Court of Kentucky answered the certified question in the affirmative and held that a fiduciary may maintain an action against an insurer for negligently underinsuring its insured in the circumstances of this case. *Brewer v. National Indemnity Co.*, 163 S.W.3d 885 (Ky. 2005).  The Court found NICO's argument that it was not party to the assignment agreement to be unpersuasive.  The Court noted that NICO's representative signed the agreement; that the parties contemplated that Brewer would retain the right to proceed against NICO; that the release was not intended to cut off Brewer's right to pursue the Coverage Claim against NICO; and that NICO was named in the section of the agreement dealing with future cooperation.  *Id.*, at 887.

Based on the answer to the certified question and the holding of the Supreme Court of Kentucky, the Fourth Circuit adopted the opinion, vacated Judge Hallanan's judgment, and remanded. *Brewer v. National Indemnity Co.*, 413 F.3d 429 (4th Cir. 2005).

Plaintiff's Revised Third Amended Complaint (# 171), filed on

December 2, 2005, alleges, *inter alia*, that:

    - The insurance agencies and NICO had a duty to inform the Individual Defendants that they were required to carry public liability insurance in the amount of $750,000;
-The insurance agencies and NICO negligently failed to provide adequate insurance coverage for the Individual Defendants;
-Plaintiff suffered loss as a result of the lack of adequate insurance for the Individual Defendants;
-In the Settlement Agreement among Plaintiff, the Individual Defendants, and NICO, NICO "agreed to litigate" the issue of whether the insurance agencies and NICO had a duty to inform and insure the Individual Defendants adequately;
-NICO has breached the Settlement Agreement and its "agreement to litigate" by raising various defenses in a motion to dismiss Plaintiff's claims.

On May 12, 2006, NICO served its Rule 26(a)(1) disclosures, (# 188), and listed William R. Fife, Esq. as an individual likely to have discoverable information relevant to disputed facts. The subject matter of his knowledge was described as follows: "Mr. Fife is expected to testify regarding his intent and expectations as a result of negotiating the Release and Settlement Statement which is at issue in this matter."

On October 17, 2006, Plaintiff served Mr. Fife with a subpoena *duces tecum* for a deposition to take place on November 7, 2006. The subpoena directed him to produce:

    1.   All documents evidencing any communications between you or any partner, member, employee, or contractor of your law firm and National Indemnity Company or its counsel reflecting the Release and

Settlement Statement or [sic; of][1] the underlying litigation styled *Leona Brewer v. Joe Maynard, et al.*

    2.  All drafts of the Release and Settlement Statement in your possession, custody or control.

The subpoena and deposition are held in abeyance pending disposition of the Motion to Quash and for Protective Order.

The Individual Defendants and attorney Fife raise the following objections to the subpoena *duces tecum*:

A.  The sought-after material is irrelevant and, therefore, not subject to discovery by any means.
B.  The attorney-client privilege protects the sought-after material.
    (1) The sought-after information meets elements of the privilege.
    (2) The Individual Defendants did not waive their privilege by attorney Fife communicating with National Indemnity in the company's role as insurer.
    (3) The joint defense rule likewise protects all communications between attorney Fife and National Indemnity in the company's role as codefendant.
C.  The work product doctrine protects the sought-after material.
    (1) To the extent that Plaintiff seeks opinion work product, she is unentitled to the sought-after material.
    (2) To the extent that Plaintiff seeks fact work product, she is unentitled to the sought-after material.
D.  Compliance with Plaintiff's subpoena would be unduly burdensome.

(# 253.)

Plaintiff's Response asserts that if a privilege exists

---

[1]  Counsel have apparently agreed among themselves that the subpoena is limited to communications about the Settlement Agreement and not the entire underlying litigation. (# 253, at 10 n.7.)

between Mr. Fife and NICO, then NICO waived the attorney-client privilege by disclosing attorney Fife as its witness.  If no privilege exists between Mr. Fife and NICO, then Plaintiff contends that the subpoena is reasonably calculated to lead to the discovery of admissible evidence.  (# 257, at 1.)  Plaintiff notes that she requested that Mr. Fife produce only those documents that relate to his communications with NICO, not with the Individual Defendants. Id., at 2.

NICO's Reply (# 262) disputes Plaintiff's argument that it waived the attorney-client privilege, and argues that the privilege belongs to the Individual Defendants and can only be waived by them.  NICO notes that the Supreme Court of Appeals of West Virginia has recognized a "quasi attorney-client privilege" between an insurer and the attorney hired to represent the insured, citing State ex rel. Allstate Ins. Co. v. Gaughan, 508 S.E.2d 75 (W. Va. 1998).  NICO steadfastly asserts that neither it nor the Individual Defendants waived the privilege.  Finally, NICO advises that it does not anticipate calling Mr. Fife as a witness to testify as stated in the Rule 26(a)(1) disclosures "if Plaintiff will agree to withdraw the subpoena issued to Mr. Fife."  (# 262, at 3.) [Emphasis in the original.]

The Individual Defendants filed a Reply (# 264) which contends that the critical point is that the attorney-client privilege belongs to the Individual Defendants, and they have done nothing to

waive it.

By Order entered December 5, 2006 (# 283), the court received *in camera* from attorney Fife, copies of five documents listed on the privilege log.  It is hereby **ORDERED** that the Clerk file the five documents, which have been marked collectively as Court Exhibit 1, under seal.

## Relevancy

The Individual Defendants, attorney Fife, and NICO assert that Plaintiff's claim that NICO breached the Settlement Agreement by opposing and moving to dismiss Plaintiff's case is frivolous. Thus, they assert that no fact can make a frivolous claim more or less likely, because such a claim fails as a matter of law.  This judicial officer is not charged with assessing the merits of the specific claims in the Revised Third Amended Complaint; to the extent that Plaintiff's claim against NICO has merit, the information sought is relevant.

## Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law.

Pursuant to the second sentence of Rule 501, state law supplies the rule of decision in this matter, and pursuant to *Brewer*, 363 F.3d at 338-39, the law of Kentucky applies to Plaintiff's claim.

In Kentucky, the attorney-client privilege is codified under Kentucky Rules of Evidence ("KRE") 503, which provides as follows:

(a) Definitions. As used in this rule:
(1) "Client" means a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.
(2) "Representative of the client" means:
    (A) A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or
    (B) Any employee or representative of the client who makes or receives a confidential communication:
        (i) In the course and scope of his or her employment;
        (ii) Concerning the subject matter of his or her employment; and
        (iii) To effectuate legal representation for the client.
(3) "Lawyer" means a person authorized, or reasonably believed by the client to be authorized to engage in the practice of law in any state or nation.
(4) "Representative of the lawyer" means a person employed by the lawyer to assist the lawyer in rendering professional legal services.
(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the

purpose of facilitating the rendition of professional legal services to the client:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;

(2) Between the lawyer and a representative of the lawyer;

(3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest therein;

(4) Between representatives of the client or between the client and a representative of the client; or

(5) Among lawyers and their representatives representing the same client.

(c) Who may claim the privilege. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

(d) Exceptions. There is no privilege under this rule:

(1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;

(2) Claimants through same deceased client. As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by transaction inter vivos;

(3) Breach of duty by a lawyer or client. As to a communication relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer;

(4) Document attested by a lawyer. As to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness; and

(5) Joint clients. As to a communication relevant to a matter of common interest between or among two (2) or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients.

11

The court finds that attorney Fife is a "lawyer" within the meaning of KRE 503(a)(3), and that the Individual Defendants are "clients" of attorney Fife, pursuant to KRE 503(a)(1). The court further finds that NICO is a "representative of the client" by virtue of KRE 503(a)(2). Applying the general rule of privilege set forth in KRE 503(b), communications between NICO's employees and attorney Fife are privileged because they are confidential communications made for the purpose of facilitating the rendition of professional legal services to the clients, and were between a representative of the client and the client's lawyer. Moreover, pursuant to KRE 503(c), attorney Fife is authorized to claim the privilege on behalf of his clients. In addition, the Individual Defendants have asserted that they claim, and have not waived, the privilege.

Plaintiff asserts that NICO waived the privilege by disclosing attorney Fife as its witness and by describing his anticipated testimony. The court is unpersuaded by this argument for at least two reasons. First, NICO is not the "client." The privilege belongs to the "client" and the client may prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client. Thus even if NICO attempted to call attorney Fife as a witness, the Individual Defendants could prevent attorney Fife's testimony. Second, the mere disclosure of a witness pursuant to

Fed. R. Civ. P. 26(a)(1) is, of course, not a promise that the witness will testify for the party, nor is it a waiver of a recognized privilege.  It is merely an identification of a person "likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . ."

Finally, the court notes that the Individual Defendants and NICO are indeed co-defendants, and the Settlement Agreement is a matter of common interest between them.  Pursuant to KRE 503(b)(3), communications between NICO and attorney Fife about the Settlement Agreement are privileged.

Having found the communications between NICO's employees and attorney Fife to be privileged, it is hereby **ORDERED** that the Motion to Quash and for Protective Order (# 252) is granted.  In light of this ruling, it is not necessary to address whether the communications and documents are subject to work product protection.

The parties will bear their own costs.  The Clerk is directed to transmit copies of this Order to all counsel of record.

ENTER: December 6, 2006

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge