IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

LEONA BREWER, et al.,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 2:02-0048

JOE MAYNARD, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants', National Indemnity Company (National) and W.E. Kingsley Company (Kingsley), motion for summary judgment as to Count II of the plaintiff's revised third amended complaint. [Docket 292]. Also pending before the court is the plaintiff's cross-motion for partial summary judgment against these defendants on Count II on the elements of duty and breach of duty. [Docket 296]. For the following reasons the defendants' motion is **GRANTED**. The plaintiff's motion is **DENIED**.

**I.    Background**

On November 29, 2001, the decedent, Edward Rose, was driving on Route 52, at or near its intersection with Middle Burning Creek Road in Mingo County, West Virginia. On that date Joe Maynard, a defendant, was involved in an accident that resulted in the death of Mr. Rose. Joe Maynard was operating a 1999 Ford Rollback truck as an employee of Maynard's Used Auto Parts and Maynard's Wrecking Service. The truck was owned and insured under the name of Norma Jean Maynard, d/b/a Maynard's Wrecker Service located in Inez, Kentucky. The company, through Ms. Maynard, had purchased a $100,000 insurance policy for the truck.

Mr. Rose's mother, Leona Brewer, as the personal representative of his estate, filed a wrongful death action as a result of this motor vehicle accident. National paid to Ms. Brewer, as part of a release and settlement agreement, the policy limits of $100,000 under the policy issued to Norma Jean Maynard.

In Count II of her revised third amended complaint the plaintiff makes a claim for negligent underinsurance. Ms. Brewer alleges that National and Kingsley had a "duty to inform Maynard's Wrecker Service and Maynard's Used Auto Parts, that the 1999 Ford Rollback involved in the November 29 accident had to carry public liability insurance in the amount of $750,000 pursuant to 49 C.F.R. § 387.303," and that this duty was breached. The plaintiff further alleges that National and Kingsley were otherwise negligent in failing to obtain adequate insurance coverage for the Maynards' business. The defendants move for summary judgment on this count, and the plaintiff moves for partial summary judgment on this count.

## II.     Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**III.     Analysis**

At issue in Count II is who had the duty to ensure the Maynards complied with the Federal Motor Carrier Safety Regulations (FMCSR) by obtaining the required minimum amount of insurance. The plaintiff contends that National and Kingsley had the duty to inform the Maynards of minimal amount of insurance required by the FMCSR. The defendants assert that this duty falls on the motor carrier.

The FMCSR requires that motor vehicles for hire, operating in interstate commerce and weighing over 10,000 pounds be insured for at least $750,000. 49 C.F.R. § 387.303(b)(2) (2003). Ms. Maynard did not indicate to National or Kingsley that her vehicle required this level of insurance. Ms. Maynard insured the 1999 Ford Rollback with National. She only requested $100,000 in coverage. This policy was underwritten by National, through two agents, one of whom is Kingsley.

Ms. Maynard first applied for an insurance policy on July 17, 1996. On that application she indicated she did not have an ICC license. The renewal questionnaires submitted on July 17, 1997, and July 17, 1998, indicated there had been no changes in operation since the last application and that no changes in units or coverage were desired at renewal. At no time did Norma Jean Maynard

indicate that she required an ICC license. She either checked this box no, or left it blank on the application forms.

On the July 1999 form, Ms. Maynard crossed out the section regarding whether she was an interstate carrier and left the entire section blank. She never requested any motor carrier filings or indicated that she had a need for such filings. She did note on this form, however, that the business operated in Kentucky, Ohio, and West Virginia. She also noted that the business operated for hire. Therefore from the face of the 1999 form facts triggering the 49 C.F.R. § 387.303 requirement for $750,000 in insurance are met. This form, however, leaves the blank the section which inquires whether the business has an ICC permit and whether an ICC filing or other endorsement is required.

A plain reading of the motor carrier regulations indicates that they place the burden of compliance on the motor carrier not on the insurer. The regulations prescribe "the minimum levels of financial responsibility required to be maintained by motor carriers," and that "[p]roof of the required financial responsibility. . . shall be maintained at the motor carrier's principal place of business." 49 C.F.R. § § 387.1 (2002), 387.7(d) (2002). The regulations place responsibility on the motor carriers, not their insurers. Therefore, I do not read them as imposing a duty on the insurer to ensure that the motor carriers secure the required insurance.

As a matter of policy, it would not be fair to place a duty on insurance companies to determine whether an insured is a motor carrier for hire, who engages in interstate commerce, or is otherwise subject to the Motor Carrier Act and its complex regulations. *Illinois Central R.R. Co. v. Dupont*, 326 F.3d 665, 669 (5th Cir. 2003). "The motor carrier is in the best position to know the nature of its business and the legal requirements for conducting that business." *Id.*

Other courts have held and I agree that insurance companies have no general duty to advise an insured as to the insured's coverage needs. *See, e.g.*, *Tri-State Pipe and Equip., Inc. v. Southern County Mut. Ins. Co.*, 8 S.W.3d 394, (Tex. App. 1999) ("When the law mandates a certain amount of monetary coverage, a matter that is totally within the control of the insured . . . we believe the insured has the obligation to comply with the law and purchase the required insurance . . . [I]t is entirely inappropriate and against public policy to place the burden on the insurer to force the insured to purchase a specific amount of insurance."). *Tri-State Pipe* is highly analogous to this case. It involved a Texas statute similar to the federal statute at issue in this case. In that case, as here, the plaintiffs did not request the higher level of insurance, and alleged it was the duty of the insurance company to ensure the plaintiffs had the required amount of insurance. The *Tri-State Pipe* court held that the duty was on the insured to comply with the Texas motor carrier regulations.

### IV. Conclusion

Having found that the insurance companies had no duty to inform Ms. Maynard of the FMCSR regulations, I **GRANT** the defendants' motion for summary judgment on Count II and I **DENY** the plaintiff's motion for partial summary judgment on Count II.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   July 20, 2007

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE